UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TERESA C. ECHEMENDIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.  1:05-CV-00053 |
| ) | |
| GENE B. GLICK MANAGEMENT ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

### I.  INTRODUCTION

Before the Court is a Motion for Temporary Restraining Order ("TRO") (Docket # 51) filed by *pro se* Plaintiff Teresa Echemendia on December 19, 2005.  Unlike most motions for injunctive relief, however, Echemendia's motion seeks more than to merely maintain the status quo; rather, she asks that the Court command Defendant Woodbridge Apartments of Fort Wayne ("Woodbridge") to reinstate (i.e., "recertify") her Section 8 housing subsidy and deem it effective as of December 1, 2005, the date it was terminated.[1]

A hearing was held on the motion on January 13 and again on January 25, 2006, at which time oral argument by the parties was heard and concluded. (Docket # 57, 61.)  The Court also considered the supplemental briefs filed by the parties on January 20, 2006. (Docket # 59, 60.)  Now, after having considered the record, the Court DENIES Echemendia's request for injunctive

---

[1] While Echemendia directs her motion to all Defendants, for the sake of simplicity the Court throughout this opinion will refer to simply Woodbridge, as all of the Defendants are agents, employees, or in some way affiliated with Woodbridge.

relief for the reasons set forth herein.

## II.  PROCEDURAL BACKGROUND

Echemendia commenced this lawsuit against Woodbridge on February 8, 2005, advancing numerous claims in her thirty-one page complaint, including a retaliation claim under the Fair Housing Act (FHA) and a breach of contract claim.[2]  (*See* Docket # 1, 4.)  Curiously, this is Echemendia's *second* motion for injunctive relief; her first motion (Docket # 41), which sought to prevent Woodbridge from terminating her Section 8 housing subsidy, was filed on October 11, 2005, and was ultimately denied by Judge Theresa Springmann on December 9, 2005 (Docket # 48).  Woodbridge did in fact terminate the subsidy, so that brings us to the current motion, which seeks its reinstatement.  Echemendia does not ask us to revisit Judge Springmann's ruling, and instead raises something new:  that Woodbridge has further retaliated against her since the date she filed her reply brief in her first motion for injunctive relief.  Among other things, she contends that Woodbridge retaliated against her by wrongfully terminating her Section 8 assistance on December 1, 2005, and by refusing to discuss recertification with her on December 13, 2005.  Accordingly, she requests that the Court command Woodbridge to process her recertification application and deem it effective as of December 1, 2005, thus effectuating the reinstatement of her Section 8 housing assistance.  As we shall see, this presents Echemendia with a daunting legal burden.[3]

---

[2] Echemendia's current dispute with Woodbridge stems from events that occurred after the filing of her original complaint and therefore raises claims that more accurately fall within the realm of supplemental pleadings. *See* Fed. R. Civ. P. 15(d).  Technically, Echemendia has not sought to supplement her prior complaint with these new allegations, but since she is proceeding *pro se*, the Court will address them in any event.

[3] Although styled as a motion for a TRO, Echemendia's motion is, in effect, seeking a preliminary injunction. *See* Fed. R. Civ. P. 65(a).

### III.  STANDARD OF LAW ON MOTION FOR INJUNCTIVE RELIEF

"A temporary restraining order . . . is an emergency remedy issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction." *Abbott Labs. v. Andrx Pharm., Inc.*, No. 05 C 1490, 2005 WL 1273105, at *1 (N.D. Ill. May 20, 2005).  "A TRO, like a preliminary injunction, is designed to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Id*. (quoting *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988)).  The standard for issuing a temporary restraining order is functionally identical to the standard for issuing a preliminary injunction. *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001); *see also Abbott Labs*., 2005 WL 1273105, at *1.

To prevail on a motion for a preliminary injunction, the moving party must show that "(1) its case has a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." *FoodComm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).  If these three conditions are met, the court must balance the harm to the nonmoving party if the injunction is issued against the harm to the moving party if it is not issued. *Id*.  "Finally, the court must consider any consequences to the public from denying or granting the injunction." *Promatek Indus., Ltd. v. Equitrac Corp*., 300 F.3d 808, 811 (7th Cir. 2002).  "Sitting as a court of equity, the court then weighs all these factors employing a sliding-scale approach." *Id*.  That is, "the greater [the movant's] chances of success on the merits, the less strong a showing it must make that the balance of harm is in its favor." *FoodComm Int'l*, 328 F.3d at 303.

Moreover, an injunction requiring affirmative action by the defendant is considered a "mandatory injunction." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

"Because a mandatory injunction requires the court to command the defendant to take a particular action, mandatory preliminary writs are ordinarily cautiously viewed and sparingly issued." *Id*.; *see also W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) (finding that "mandatory injunctions are rarely issued and interlocutory mandatory injunctions are e[v]en more rarely issued, and neither except upon the clearest equitable grounds").

### IV.  FINDINGS OF FACT[4]

After hearing oral argument by the parties and reviewing the record, the Court makes the following findings of fact:

Since November 4, 2005, the date her last brief was filed in her first motion for injunctive relief, Echemendia contends that Woodbridge further retaliated against her by (1) failing to send her a final notice before terminating her housing subsidy on December 1, 2005;[5] (2) sending notices that fail to strictly comply with forms issued by the United States Department of Housing and Urban Development (HUD); (3) leaving a notice of termination on her doorstep without first knocking on her door; (4) failing to discuss recertification with her when she visited Woodbridge's rental office on December 13, 2005; and (5) continually refusing to provide her with copies of the verification forms she signed last year and the blank consent forms for this year's recertification. Echemendia adamantly asserts that Woodbridge's actions are in retaliation for her filing complaints; however, she does not contend that Woodbridge acted with an intent to

---

[4] So as to comply with Rule 52(a) of the Federal Rules of Civil Procedure, the Court makes findings of fact set forth in a narrative fashion. Any finding of fact deemed to be a conclusion of law is hereby incorporated as such, and any conclusion of law deemed to be a finding of fact is also hereby incorporated as such.

[5] Echemendia does not dispute that she received at least three prior written notices from Woodbridge reminding her to recertify and stating that her assistance would be terminated if she failed to complete the process by December 1, 2005. (*See* Aff. in Supp. of Pl.'s Mot. for T.R.O., Exs. 5-8.)

discriminate against her because of her disability or national origin. (*See* Mot. for Prelim. Inj. (Docket # 41) at 16-17.)

Furthermore, while Echemendia reports that she feels the "loss of her home" is an irreparable harm, she also concedes that she has the ability to sue for monetary damages and plans to advocate her case in state court if she is eventually evicted. Moreover, she acknowledges that, because Woodbridge has a fixed number of Section 8 housing slots (i.e., twenty-six), her Section 8 housing subsidy cannot simply be reinstated without causing significant harm to someone on Woodbridge's Section 8 housing waiting list to whom her slot has since been offered.[6]

### V.  CONCLUSIONS OF LAW

Applying Echemendia's allegations to the legal standard for granting injunctive relief, it is readily apparent that Echemendia falls far short of demonstrating the conditions necessary for the granting of an injunction, much less the clear equitable grounds for the issuance of a mandatory one requiring Woodbridge to take affirmative action. *See ChoiceParts, LLC v. Gen. Motors Corp.*, 203 F. Supp. 2d 905, 914 (N.D. Ill. 2002) (quoting *W.A. Mack*, 260 F.2d at 890).

As discussed *supra*, to prevail on a motion for injunctive relief, Echemendia must show that her case has a likelihood of success on the merits; this means that her chance of success must be "better than negligible." *Kinney v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 994 F.2d 1271, 1278 (7th Cir. 1993). In order to have *any* chance of success in a retaliation claim under the FHA, a plaintiff must establish that: "(1) she is a protected individual under the

---

[6] Woodbridge reports that the waiting list for Echemendia's Section 8 housing slot consisted of nine individuals as of December 13, 2005, and four individuals as of the date of the hearing.

FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights . . . , (3) [d]efendants were motivated in part by an intent to discriminate, or their conduct produced a disparate impact, and (4) [d]efendants coerced, threatened, intimidated, or interfered with [p]laintiff on account of her protected activity under the FHA." *East-Miller v. Lake County Highway Dept.*, 421 F.3d 558, 563 (7th Cir. 2005).

    Here, Echemendia alleges that Woodbridge had a retaliatory motive in taking the actions it did, but she never argues, much less suggests she has any evidence, that Woodbridge was motivated by an intent to discriminate against her based on her disability or national origin. This omission rings the death knell for her FHA retaliation claim, because in order for it to survive, she must demonstrate, directly or indirectly, that Woodbridge had a discriminatory animus in taking the actions it did. *Id.*; *see also Echemendia v. Gene B. Glick Mgmt. Corp.*, No. 1:05-CV-53, 2005 WL 3359108, at *3 (N.D. Ind. Dec. 9, 2005). Because Echemendia offers no allegations on this point, any retaliation claim under the FHA has absolutely no chance of succeeding on the merits, resulting in denial of her motion.

    And, to the extent that Echemendia is alleging any other species of retaliation based on a constitutional claim or otherwise, she is equally unsuccessful. "[R]etaliation claims protect constitutional rights only against their *unequal* infringement." *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 (7th Cir. 1996). Thus, for purposes of Echemendia's retaliation claim, it does not matter if Woodbridge failed to strictly comply with certain HUD regulations in administering the recertification process to her; rather, what matters is whether Woodbridge administered the recertification process in a more favorable manner to someone who did not voice complaints. *See id.* While Echemendia expounds at great length in

6

her briefs about the many alleged wrongs committed by Woodbridge, she never attempts to identify anyone who did not assert complaints, but was treated more favorably by Woodbridge during the recertification process.[7] This omission is fatal. Thus, in addition to the collapse of Echemendia's FHA retaliation claim because of a lack of discriminatory animus, no retaliation claim can survive her failure to show disparate treatment.

The Court next turns to the second condition necessary to obtain injunctive relief – no adequate remedy at law. Because the loss of her subsidy is a discrete calculable amount, Echemendia can easily be made whole through the award of monetary damages. *See Ram Prods. Co., Inc. v. Chauncey*, 967 F. Supp. 1071, 1085 (N.D. Ind. 1997) ("Where an award of monetary or other legal damages will make the plaintiff whole after trial, an adequate remedy at law exists."). And, if Woodbridge did in fact breach the lease, damages are available under Indiana law, even if Echemendia is evicted. *Nate v. Galloway*, 408 N.E.2d 1317, 1322 (Ind. Ct. App. 1980) ("[T]he cases show that when a wrongful eviction has occurred, the tenant may clearly sue for damages based on an improper termination of the lease and his lost interest therein."); *see* 49 Am. Jur. 2d *Landlord and Tenant* § 97 (1995). Indeed, at the January 25, 2006, hearing, Echemendia *conceded* that monetary damages are a sufficient remedy and that she expects to assert them if she is evicted.

As to the third requirement, while Echemendia understandably considers the "loss of her home" an irreparable harm, that loss is not inevitable. Indeed, Echemendia has the option to

---

[7] Moreover, Woodbridge's actual termination of Echemendia's assistance on December 1, 2005, can hardly be considered retaliatory; under HUD regulations, the termination of a tenant's assistance is the natural result of the tenant's failure to submit the required recertification documents by his or her anniversary date. *See* 24 C.F.R. §§ 5.218(c), 232(a); HUD, *4530.3 Occupancy Requirements of Subsidized Multifamily Housing Programs* § 8-5 (Aug. 26, 2004).

remain in her apartment by paying market rent until she is recertified for Section 8 housing, a process she continually refuses to undertake with Woodbridge.[8] (*See* Pl.'s Mot. for T.R.O. at 4, 9; Aff. in Supp. of Pl.'s Mot. for T.R.O., Ex. 17.)  Furthermore, "when economic loss can be calculated and compensated by monetary damages, there is generally no claim for irreparable injury." *Ram Prods.*, 967 F. Supp. at 1085.  Thus, since Echemendia's loss can be easily calculated and compensated by monetary damages, her contention of irreparable harm falls flat.

Accordingly, given Echemendia's inability to surmount the basic requirements for an injunction, the Court would not really even need to proceed with the Seventh Circuit's sliding scale analysis. *See Celebration Intern., Inc. v. Chosen Intern., Inc*., 234 F. Supp. 2d 905, 919-20 (S.D. Ind. 2002) (articulating that because the movant "failed to carry its burden with respect to a threshold issue," the court need not consider the other preliminary injunction factors).  Nevertheless, even if we did proceed, weighing the public interest tips the balance against granting an injunction.

Here, the public interest at stake is the consistent, equitable, and efficient distribution of public housing benefits in accordance with HUD regulations.  In that vein, it is clear that Echemendia was well aware of the penalty for failing to file her recertification papers by December 1, 2005, as she displays great familiarity with HUD regulations, has successfully completed the recertification process at least thirteen times before, received at least three written notices from Woodbridge reminding her to recertify, and filed her first motion for injunctive relief in the hopes of avoiding the termination of her assistance on December 1, 2005.  Because

---

[8] Woodbridge brought the recertification paperwork to the hearing on January 25, 2006, and offered Echemendia an opportunity to sign the necessary documents to obtain a position on the waiting list; Echemendia did not seem inclined to pursue that opportunity.

there are a fixed number of Section 8 slots available at Woodbridge and Echemendia's slot has been offered to another individual on the waiting list, affirmative relief in this case would necessitate the withdrawal of Section 8 housing benefits from that innocent third party so that Echemendia could be reinstated. *See League of United Latin Am. Citizens v. Bredesen*, No. 3:04-0613, 2004 WL 3048724, at *10 (M.D. Tenn. Sep. 28, 2004) (declining to grant an injunction when it would not advance the public interest and "would result in harm to innocent third-parties"). In light of the record here, most notably Echemendia's clear awareness of the consequences under HUD regulations if she neglected the December 1 deadline, taking away the subsidy of a third party so that Echemendia can be reinstated would run counter to the public's interest in the consistent and efficient administering of Section 8 housing.

Consequently, even if we were to balance all relevant factors, the scale clearly tips against Echemendia's request for injunctive relief, and her motion will be DENIED.

### VI.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Temporary Restraining Order (Docket # 51) is hereby DENIED.

Enter for this 30th day of January, 2006.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

9