UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TERESA C. ECHEMENDIA, )<br>      )<br>    Plaintiff, )<br>      )<br>    v. )<br>      )<br>GENE B. GLICK MANAGEMENT )<br>CORPORATION, et al., )<br>      )<br>    Defendants. ) | CAUSE NO.  1:05-CV-00053 |

## OPINION AND ORDER

Plaintiff Teresa C. Echemendia seeks Rule 11 sanctions against the Defendants[1] and their counsel, Timothy J. McCaulay, for allegedly making fraudulent statements in two briefs and at a hearing in connection with opposing her request for injunctive relief.[2] (Docket # 82.) Because her motion is untimely and amounts to no more than re-packaging prior unsuccessful arguments, Echemendia's motion will be DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Echemendia commenced this lawsuit against Woodbridge on February 8, 2005,

---

[1] While Echemendia directs her motion to all Defendants, for the sake of simplicity the Court throughout this opinion will refer simply to Woodbridge, as all of the Defendants are agents, employees, or in some way affiliated with Woodbridge.

[2] Echemendia has appealed the underlying denial of her second request for injunctive relief and the subsequent motion to reconsider. However, the pending appeal does not strip this Court of jurisdiction to rule on the motion for Rule 11 sanctions. *See Kathrein v. Siegel*, No. 05 C 1718, 2006 WL 1371459, at * 4 (N.D. Ill. May 16, 2006) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)).

advancing numerous claims, including discrimination and retaliation claims under the Fair Housing Act (FHA). (Docket # 1.) She later filed a motion for preliminary injunction, which sought to prevent Woodbridge from terminating her Section 8 housing subsidy. (Docket # 41.) This motion was denied (Docket # 48), and Woodbridge subsequently terminated the subsidy. As a result, Echemendia made a second request for injunctive relief on December 19, 2005, asking that the Court command Woodbridge to reinstate (i.e., "recertify") her Section 8 housing subsidy and deem it effective as of the date it was terminated.[3] (Docket # 51.) Among other things, she contended that Woodbridge retaliated against her by sending notices that failed to strictly comply with guidelines issued by the United States Department of Housing and Urban Development (HUD) and by failing to discuss recertification with her when she visited Woodbridge's rental office on December 13 and 14, 2005.

After holding hearings on January 13 and 25, 2006, and after considering supplemental briefs filed by the parties on January 20, 2006, the Court denied Echemendia's second request for injunctive relief on January 30, 2006. (Docket # 57, 59, 60-61, 63.) Echemendia subsequently filed a motion for reconsideration on February 17, 2006, which was denied on March 13, 2006, because, among other things, "Echemendia merely re-package[d] or rehashe[d] prior arguments, all which were unsuccessful the first time." (Docket # 67, 73.)

On May 8, 2006, Echemendia served Woodbridge with a motion for Rule 11 sanctions, claiming that Woodbridge made fraudulent statements in its brief opposing her second request for injunctive relief, in its January 20 supplemental brief, and at the January 13 hearing. She filed

---

[3] Although Echemendia labeled her request as a motion for a temporary restraining order, her motion, in effect, sought a preliminary injunction. *See* Fed. R. Civ. P. 65(a).

this motion with the Court on June 13, 2006.

## II. LEGAL STANDARD

Echemendia claims that Woodbridge and its counsel should be sanctioned for violating Federal Rule of Civil Procedure 11. Rule 11(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Litigants who violate Rule 11(b) are subject to sanctions; however, these sanctions "are a severe penalty and not . . . to be imposed lightly." *Lee-Kathrein v. McGrath*, No. 04 C 7324, 2006 WL 897749, at *1 (N.D. Ill. March 31, 2006) (citing *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263 (7th Cir. 1993)).

## III. DISCUSSION

### A. Echemendia's Rule 11 Motion Violates the Rule 11 Safe Harbor Provision and Is Untimely

Woodbridge contends that Echemendia's motion should be denied because it violates the Rule 11 "safe harbor" provision. The safe harbor provision provides that after a motion for sanctions is served on the nonmoving party, it "shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A).

Woodbridge concedes that Echemendia complied with the safe harbor provision insofar as she waited twenty-one days after serving Woodbridge with the Rule 11 motion before filing it with the Court. Nevertheless, Woodbridge contends that Echemendia violated the provision because the motion was not served twenty-one days prior to the denial of her motion for reconsideration.[4]

While the Seventh Circuit Court of Appeals has not squarely addressed the issue of exactly when Rule 11 motions need to be *served* on an opposing party, it has explicitly rejected the proposition that these motions need to be *filed* with the Court before final judgment. *See Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999). Indeed, the *Divane* Court simply held that "Rule 11(c)(1)(A) does not specify any time period when a motion for sanctions must be filed, and we see no need to establish one. The decision to impose sanctions is left to the

---

[4] Woodbridge concedes that it would have been impossible for Echemendia to serve her Rule 11 motion twenty-one days prior to the second denial of injunctive relief on January 30, since all but one of the alleged fraudulent statements were made on January 13 and 20.

discretion of the trial court in light of the available evidence." *Divane*, 200 F.3d at 1025.

Following *Divane*, some District Courts in the Seventh Circuit have opined that "a motion for sanctions may be filed with the court after judgment *as long as the moving party has first served the motion for sanctions on the offending party twenty-one (21) or more days prior to final judgment.*" *Hamil v. Mobex Managed Servs. Co.*, 208 F.R.D. 247, 250 (N.D. Ind. 2002) (emphasis added) (denying motion for Rule 11 sanctions because defendant "did not serve the motion on Plaintiffs before the Court had rendered its final judgment"); *see also Ardisam, Inc. v. Ameristep, Inc.*, 343 F. Supp. 2d 726, 731 (W.D. Wis. 2004) (citing *Divane*, 200 F.3d at 1026) ("[T]he party must have served the alleged violator at least 21 days before the entry of judgment. . . . Post-judgment service does not satisfy the safe harbor provision for a good reason; the party facing sanctions is no longer able to withdraw or correct its allegedly flawed submission.") (internal citation omitted).

Although the orders denying Echemendia's second request for injunctive relief and her motion for reconsideration are not a final judgments,[5] we find the reasoning behind the *Ardisam* Court's decision applicable here. By waiting until May 8 to serve Woodbridge with her motion for sanctions, Echemendia did not afford Woodbridge the opportunity to withdraw or correct its allegedly flawed statements before the Court issued the orders and before she appealed them. At a minimum, Echemendia should have served Woodbridge with her motion for sanctions twenty-one days before the Court's order denying her motion for reconsideration, and her failure to do so violated the safe harbor provision.

---

[5] Instead, orders regarding preliminary injunctions are appealable as an exception to the final judgement rule. *See* 28 U.S.C. §§ 1291, 1292(a)(1).

But even if Echemendia did not violate the safe harbor provision, her failure to serve Woodbridge until May 8 raises timeliness issues. Motions for Rule 11 sanctions should be filed "as soon as practicable after discovery of a Rule 11 violation." *Divane*, 200 F.3d at 1027 (quoting *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992)). Thus, the party bringing the motion must do so "within a reasonable amount of time." *Kaplan*, 956 F.2d at 152. "Reasonableness is necessarily dictated by the specific facts and circumstances in a given case. . . . Seldom should it be necessary to wait for the district court . . . to rule on the merits of an underlying question of law." *Id.*

Here, Echemendia served her Rule 11 motion nearly four months after the alleged Rule 11 violations were made. In fact, Echemendia ostensibly was aware of the purported violations well-before May 8, as her list of allegations amount to no more than re-packaging into a different motion format her arguments in the second request for injunctive relief and the motion to reconsider. But rather than serve a Rule 11 motion on Woodbridge at the end of January, she waited until after the denial of her second request for injunctive relief and her motion for reconsideration. Thus, her decision to serve Woodbridge on May 8 was unreasonable and untimely.

Because Echemendia's Rule 11 motion violated the safe harbor provision and was untimely, her motion can be denied without further discussing the merits. However, because the merits can easily be disposed of as unfounded, we proceed with a brief discussion of Echemendia's allegations.

### B. Echemendia's Motion for Rule 11 Sanctions is Unfounded

Echemendia makes eight allegations against Woodbridge in her motion for sanctions;

however, all but one amount to no more than rehashing prior arguments, and the only new allegation is unexplained and unsupported. As such, Echemendia's allegations do not rise to the level of a Rule 11 violation.

For example, in allegations one and two, Echemendia merely rehashes prior arguments regarding the sufficiency of the three reminder notices that Woodbridge sent her about her recertification. In a similar vein, Echemendia weaves in allegations three, four, five, and seven a previously told tale regarding Woodbridge's alleged refusal to discuss recertification with her on December 13 and 14, 2005.[6] Echemendia repeatedly asserts in these allegations that Woodbridge has committed fraud. However, her "proof" of this alleged fraud generally amounts to no more than her own unsupported contentions, which is not nearly enough to meet the high standard for establishing a Rule 11 violation. *See Divane v. Majestic Properties, Inc.*, No. 01 C 2577, 2002 WL 126106, at *4 (N.D. Ill. Jan. 31, 2002) (denying a motion for Rule 11 sanctions in part because the party's accusation of misrepresentation was "without evidentiary support").

Furthermore, Echemendia's allegations merely demonstrate that she disagrees with Woodbridge's factual accounts and their legal interpretations of these facts, which is not enough to establish that Woodbridge committed fraud in violation of Rule 11. *See Stuart-James Co., Inc. v. Rossini*, 736 F. Supp. 800, 807 (N.D. Ill. 1990) (finding that plaintiff's "proof" of a Rule 11 violation "is not demonstrating falsehood by any standard of which this court is aware; it merely indicates disagreement"). These disagreements between Echemendia and Woodbridge are more appropriately resolved through the litigation process. *See Divane*, 2002 WL 126106, at *5 ("The

---

[6] Although Echemendia contends that she was attempting to be recertified for Section 8 housing on December 13 and 14, Woodbridge characterizes the meetings as attempts to apply for Section 8 housing.

Trustees indicate a disagreement between the parties that will need to be resolved in this litigation, but not a misrepresentation by Majestic in violation of Rule 11(b)(3).").

Echemendia further argues in allegation six that the following assertion made by Woodbridge in its January 20 brief is misleading: "The HUD Handbook does not define the phrase 'assistance is available on the property.' Nor has the Non-governmental Defendants' research disclosed any judicial interpretation of the phrase as applied to a Section 8 recertification situation." (Non-Governmental Defs.' Second Supplemental Br. in Opp'n to Pl.'s Second Req. for Injunctive Relief 4.)  Specifically, she contends Woodbridge should be sanctioned for not mentioning an email from Indiana Quadel indicating that "it *appears* the assistance is still available [to the Woodbridge property]."[7] (Pl.'s Mot. for Recons. of the Ct.'s Denial of her Mot. for TRO Ex. 4) (emphasis added). However, this email reveals nothing that would lead the Court to conclude that Woodbridge's argument was misleading. The email is certainly not a judicial interpretation of the phrase "assistance is available at the property," nor does it provide any sort of legal interpretation of the phrase. In fact, the email never cites to any HUD regulations; instead, it merely concludes that because Woodbridge was holding the subsidy until the Court reached a decision regarding injunctive relief, assistance *appeared* to be available.

Echemendia ostensibly makes only one new argument in her motion–that Woodbridge's assertion, made in its brief opposing her second request for injunctive relief, that "there would be no need to invoke any exception to the *Rooker-Feldman* doctrine at this time" was made for an improper purpose. (Non-Governmental Defs.' Supplemental Br. in Opp'n to Pl.'s Mot. for TRO

---

[7] Again, Echemendia is essentially rehashing an old argument here. (*See* Pl.'s Mot. for Recons. 14-15.)

8

4.) Echemendia conclusorily states that Woodbridge's assertion was "meant to undermine the Plaintiff's right to the Court's fair consideration of her TRO as a federal matter." (Mot. for Sanctions 6.) However, it is difficult to understand what she is getting at, as she offers absolutely no evidence demonstrating that Woodbridge's argument was made for an improper purpose, and offers little in the way of explanation for her contention.[8] Thus, her bald assertion hardly rises to the level needed to impose a Rule 11 sanction.

In sum, Echemendia fails to demonstrate that Woobridge's prior arguments were not "warranted by existing law," did not have "evidentiary support," or were otherwise offered "for any improper purpose." Fed. R. Civ. P. 11(b). Instead, Echemendia, by continuously rehashing and re-packaging previous unsuccessful arguments, is inching her way closer to violating Rule 11 by forcing Woodbridge and this Court to spend time and resources re-litigating and deciding issues that this Court has already warned her do not matter.[9] (*See* January 30, 2006, Op. and Order 6-7.) ("[F]or purposes of Echemendia's retaliation claim, it does not matter if Woodbridge failed to strictly comply with certain HUD regulations in administering the recertification process to her; rather, what matters is whether Woodbridge administered the recertification process in a more favorable manner to someone who did not voice complaints.")

---

[8] The only explanation she offers is that "[i]t was the Defendant's contention that the Plaintiff was asking the court to intervene in a state proceeding, but in fact, there was no state proceeding; the eviction proceeding wasn't filed with the Allen County Small Claims Division until February 15, 2006." (Mot. for Sanctions 6.) Insofar as Echemendia is contending that Woodbridge misled the Court, this is clearly not the case, since they repeatedly referred to any eviction proceedings as "threatened." (Non-Governmental Defs.' Supplemental Br. in Opp'n to Pl.'s Mot. for TRO 1-2.)

[9] Echemendia's continued assertion of her arguments perhaps demonstrates that she is having difficulty seeing the forest from the trees. She contends in the underlying litigation that she was discriminated and retaliated against by Woodbridge. However, the overwhelming focus of her litigation for at least the past nine months–Woodbridge's alleged noncompliance with HUD guidelines–has had seemingly little to do with establishing legally supportable claims of discrimination or retaliation.

## IV. CONCLUSION

Because Echemendia's Motion for Sanctions (Docket # 82) is untimely and amounts to no more than re-packaging prior unsuccessful arguments, it is DENIED.

SO ORDERED.

Enter for July 27, 2006.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge